# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY LUIS TORRES,<br><br>Petitioner,<br><br>v.<br><br>STUART SHERMAN, Warden,<br><br>Respondent. | Case No.: 17cv978-MMA(BGS)<br><br>**ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>[ Doc. No. 1] |

Petitioner Larry Luis Torres (hereinafter referred to as "Petitioner"), a state prisoner proceeding *pro se* and *in forma pauperis*, filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to Title 28, United States Code section 2254.[1] Doc. No. 1 ("Pet."). Petitioner challenges his convictions for second degree murder and premeditated attempted murder. *Id.* at 15; *see also* Lodgment ("Lodg.") 1 Vol. 2 at 130.[2] Respondent answered the Petition on October 11, 2017 [Doc. No. 11 ("Ans.")] and Petitioner filed a traverse on January 29, 2018 [Doc. No. 18 ("Trav.")]. As outlined

---

[1] Although this case was randomly referred to United States Magistrate Judge Bernard G. Skomal pursuant to 28 U.S.C. § 636(b)(1)(B), the Court has determined that neither a Report and Recommendation nor oral argument are necessary for the disposition of this matter. *See* S.D. Cal. Civ.L.R. 72.1(d).

[2] All record citations in the Order are based on CM/ECF page numbers.

1

below, the Court **DISMISSES** the Petition with prejudice as untimely, thereby, declining to decide the Petition on the merits.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from the California Court of Appeal's opinion in *People v. Contreras*, No. D047266, 2006 Cal. App. Unpub. LEXIS 11306 (Dec. 15, 2006):

> The Organized Entres Kabrones (OEK) and Locos are rival Hispanic street gangs. Martinez and Lamas were members of the OEK gang, while Torres and Contreras either were Locos members or backed the Locos gang. In the evening of January 6, 2004, Martinez, his girlfriend Becky Soto and Lamas went to the Key Largo apartments in El Cajon to visit Lamas's girlfriend in Martinez's Honda Civic. The Key Largo apartments are located on Locos's "turf" and Lamas often received threats and whistles when he visited his girlfriend at her apartment. At that time, Lamas was under house arrest for possession of a concealed knife and the outing violated his curfew.
>
> After visiting Lamas's girlfriend, the threesome went to another apartment complex to find their friends, but were directed to a trailer park. When Lamas got into the Honda he noticed a dark colored Mustang and saw the car again on the way to the trailer park. Soto made a U-turn to see if the Mustang followed them; eventually, the Mustang ended up right behind them. Soto noticed two people in the Mustang and that the driver had a goatee and black hair. Lamas and Soto later identified Contreras as the driver of the Mustang and Torres as the passenger.
>
> After Lamas had Soto pull over, the Mustang stopped in the middle of the street in front of them. Lamas did not have any weapons and learned that Martinez had a pocketknife. Soto told Martinez to put the knife away, but did not remember what he did with it. Martinez walked to the passenger side of the Mustang and Lamas went to the passenger side rear of the car. Although Lamas recognized the defendants, he could not recall the context. Lamas identified himself as OEK and asked the defendants in a commanding voice where they were from, meaning what gang, [he] received a response that he did not understand and then heard someone say "that's cool." Soto remembered that Lamas raised his hands as if he wanted to fight when he walked toward the Mustang, but saw nothing in his hands.
>
> As Martinez leaned down to look inside the car with his hands by his sides, Lamas tried to push him away because he did not know what would happen. Lamas heard someone inside the car say "fuck OEK" and saw Martinez straighten up with a surprised look on his face. Lamas also saw a gun come

up from inside the Mustang, heard a shot and saw Martinez grab his stomach. Torres then shot Lamas in the back as he ran toward the Honda. Lamas never saw Martinez take the knife out of his pocket and neither he nor Soto saw Martinez make any sudden or threatening moves.

After the Mustang "peeled out," Lamas ran back and saw that Martinez had been shot in the head. Lamas searched Martinez's pockets for a cell phone and pulled the pocketknife out. He dropped the knife, ran back to the Honda to call the police, with the first officers arriving in less than a minute. Police later recovered the folded pocketknife and found no other weapons at the scene.

The police located the Mustang and took the defendants into custody. A search of the car revealed a loaded .41 caliber revolver, containing both defendants' fingerprints, and a loaded .25 caliber semiautomatic pistol. Police also found two bags containing marijuana and a notebook with Contreras's name and drug weights and dollar amounts. Blood spatter on the Mustang matched Martinez and Contreras had an oozing stab wound on his back.

Lamas survived a single gunshot wound to the abdomen, but Martinez died from gunshot wounds to his head and abdomen. The .41 caliber bullet removed from Martinez's brain matched the weapon found in the Mustang and the .25 caliber bullet removed from his abdomen was consistent with the other weapon in the Mustang, but could not be positively identified as having been fired from that gun. The angle of bullet that entered Martinez's forehead suggested Martinez was bending down when he was shot.

The defendants were charged with murder and attempted murder. As to both counts, it was alleged that the defendants intentionally discharged a firearm and committed the crime for the benefit of a gang. Special circumstances were also alleged as to the murder count of discharging a firearm from a motor vehicle and committing the offense for the benefit of a gang. Also, as to the attempted murder, it was alleged that great bodily injury had been inflicted.

The matter proceeded to trial and both defendants testified. About a week before the murder, OEK gang members stabbed Contreras while he was in OEK territory. After the stabbing, Locos gang member Frank Soto (no relation to Becky Soto), gave Contreras a gun to protect himself. Thereafter, Contreras never left the house without the gun and ultimately used it to shoot Martinez. Contreras claimed Martinez suddenly straightened from a crouched position and had something in his hand. Contreras believed Martinez had a gun and admitted that he and Torres almost simultaneously fired their weapons. Contreras then heard Torres fire his gun a second time. Torres claimed he fired his weapon after Martinez lunged at him and that he fired again when Lamas came toward him. Although Torres admitted he did not see a gun, he believed

that Martinez was going to shoot him.

At the conclusion of testimony, the People successfully amended the information to add a separate enhancement to the murder charge that it was perpetrated by a firearm from a vehicle against a person outside the vehicle. A jury found Contreras guilty of first degree murder, Torres guilty of second degree murder, and both guilty of premeditated attempted murder. The jury also found true all special circumstance allegations attached to both counts. The trial court sentenced Contreras to state prison for life without the possibility of parole, plus a life term and an additional term of 50 years to life, and Torres to state prison for 70 years to life, with an additional three-year term.

Lodg. 10 at 2-5.[3]

Petitioner and Contreras both filed unsuccessful appeals. *See* Lodg. 3; *see also* Lodg. 4. Petitioner argued that the trial court erred in admitting certain evidence, there was insufficient evidence to sustain the gang enhancements, and the trial court erred in permitting the prosecution to amend the information to add a "drive-by" enhancement. *See* Lodg. 3. On August 14, 2006, Contreras filed a habeas corpus petition in the California Court of Appeal alongside his appeal arguing, among other things, ineffective assistance of counsel for failing to present Martinez's juvenile court record pursuant to California Welfare and Institutions Code section 827. *See* Lodg. 8. Contreras attached a petition for disclosure of Martinez's juvenile court record, the June 8, 2006 order granting that petition, and Martinez's juvenile court record. *See id.* at 44-76. On August 21, 2006, the California Court of Appeal ordered the Clerk's office "to send a copy of [Contreras' state petition], the record submitted with the petition, and [the June 8, 2006] order, to any party or counsel in *People v. Contreras* (D047266) who is not a party or counsel in [Contreras' habeas corpus proceedings]." *See* Lodg. 9. The California Court of Appeal denied Contreras' petition on December 15, 2006. *See* Lodg. 11. On that

---

[3] This Court presumes the State Court's factual determinations to be correct absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *see also Parke v. Raley*, 506 U.S. 20, 35 (1992) (holding findings of historical fact, including inferences properly drawn from such facts, are entitled to statutory presumption of correctness).

same date, the California Court of Appeal affirmed Torres' judgment. *See* Lodg. 10. Petitioner appealed to the California Supreme Court on January 12, 2007, arguing that the trial court erred in admitting certain evidence, there was insufficient evidence to sustain the gang enhancements, and the trial court erred in permitting the prosecution to amend the information to add a "drive-by" enhancement. *See* Lodg. 12. The California Supreme Court summarily denied review without citation to authority on February 21, 2007. *See* Lodg. 13.

On June 24, 2014, Petitioner filed a petition pursuant to California Welfare and Institutions Code section 827 with the San Diego County Superior Court for the disclosure of Martinez's juvenile court record. *See* Doc. No. 1-1 ("Pet. Ex.") at 48-67. This petition was granted on September 11, 2014. *See id.* at 80. On September 1, 2015,[4] Petitioner constructively filed a petition for writ of habeas corpus in the San Diego County Superior Court arguing that non-disclosure of Martinez's juvenile court record violates *Brady v. Maryland,* 373 U.S. 83 (1963) because it is exculpatory evidence that could have supported his self-defense claim at trial. *See* Lodg. 14. The court denied the petition as untimely on November 25, 2015, but noted the petition also failed on the merits. *See* Lodg. 15. On February 10, 2016, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, 4th Appellate Division, arguing the prosecution failed to disclose Martinez's juvenile court record in violation of *Brady*. *See* Lodg. 16. The Court of Appeal denied the petition on February 26, 2016. *See* Lodg. 17. Petitioner

---

[4] According to the "mailbox rule," a habeas petition is deemed constructively filed when the *pro se* prisoner delivers it to prison authorities for forwarding to the clerk of the court. *Ramirez v. Yates*, 571 F.3d 993, 996 n.1 (9th Cir. 2009). In the instant case, it is unclear when Petitioner delivered the state habeas petition to prison authorities (*see* Pet. Ex. N. at 148), however, because he signed the petition on September 1, 2015, the Court liberally construes September 1, 2015 as the mailing date. *See Marsh v. Soares*, 223 F.3d 1217, 1218 n. 1 (10th Cir. 2000) ("Liberal application of the mailbox rule . . . causes us to treat the petition as placed in the hands of prison authorities on the same day it was signed."); *see also Torres v. Cullen,* No. CIV S-09-2150 JAM GGH P, 2011 U.S. Dist. LEXIS 978 at *4-5 n.2 (E.D. Cal. Jan. 4, 2011) (citing *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001)).

constructively filed a petition for writ of habeas corpus in the California Supreme Court on April 26, 2016, raising the same argument as his previous petitions. *See* Lodg. 18. The California Supreme Court denied the petition without comment, on April 19, 2017. *See* Lodg. 19. Finally, Petitioner constructively filed the instant Petition with this Court on May 7, 2017. *See* Pet.

## SCOPE OF REVIEW

Title 28, United States Code section 2254(a), sets forth the scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

## DISCUSSION

Petitioner presents a single ground for relief: the prosecution failed to obtain, and then disclose, Martinez's juvenile court record pursuant to California Welfare and Institutions Code section 827, in violation of *Brady*. *See* Pet. Respondent argues the Petition should be dismissed as untimely. *See* Ans. at 14-17. Respondent alternatively argues that the state courts correctly determined there is no merit to Petitioner's *Brady* claim. *Id.* at 20-26. In light of the Court's decision that the Petition is untimely, the Court declines to address Respondent's arguments regarding the merits of Petitioner's claim.

### A. *The AEDPA's Statute of Limitations*

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), effective April 24, 1996, a one year statute of limitations applies to an application for a writ of habeas corpus by a person in custody pursuant to a state court judgment. *See* 28 U.S.C. § 2244(d)(1). The one year limitations period runs from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

Petitioner argues that the date he discovered the factual predicate of his claim is later than the date his judgment became final. Therefore, he contends the discovery of the factual predicate should trigger the commencement of the statute limitations. *See* Trav. at 7. Specifically, Petitioner claims that the factual predicate of his *Brady* claim was not discoverable until he received Martinez's juvenile court record in August or September of 2014. *See* Trav. at 7. Respondent argues that the date the judgment became final is later than the factual predicate date and should commence the statute of limitations. *See* Ans. at 14-15. Specifically, Respondent contends that Petitioner could have discovered the factual predicate of his claim around August 21, 2006, when the Court of Appeal consolidated Contreras' habeas corpus petition with Petitioner and Contreras' direct appeal and ordered a copy of the habeas corpus record be sent to all parties or counsel. *See* Ans. at 15. That record included Martinez's juvenile court record. *See* Lodg. 8 at 48-76. In response, Petitioner argues that the information in Contreras' file is irrelevant to the timeliness of the instant Petition, and that it establishes that Martinez's juvenile court record was not disclosed at trial. *See* Trav. at 7.

Petitioner's judgment became final by the conclusion of direct review on May 22, 2007, ninety days after the California Supreme Court denied Petitioner's petition for

review on February 21, 2007.[5] *See Bowen v. Roe,* 188 F.3d 1157, 1159 (9th Cir. 1999) (explaining that direct review "includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition"); *see also* Cal. R. Ct. 8.532(b)(2)(A) (stating that California Court decisions are final on filing the denial of a petition for review).

Petitioner maintains the statute of limitations runs from the date he received Martinez's juvenile court record in August or September of 2014 because that is when he discovered the factual predicate of his claim. *See* Trav. at 7. Section 2244(d)(1)(D), however, does not delay commencement of the limitations period until the petitioner *actually* discovers the factual predicate; it delays it until the factual predicate "*could* have been discovered with due diligence." *Ford v. Gonzalez*, 683 F.3d 1230, 1235 (9th Cir. 2012) (emphasis added). Due diligence requires reasonable diligence for the circumstances. *Id.; Quezada v. Scribner*, 611 F.3d 1165, 1168 (9th Cir. 2010). The "due diligence clock" begins when the individual knows, or through due diligence could discover, the important facts, regardless of when their legal significance is actually discovered. *Ford*, 683 F.3d at 1235.

Petitioner received Martinez's juvenile court record in or around August 2006, when the Clerk's office sent him Contreras' habeas corpus record. *See* Lodg. 9. Petitioner does not dispute receipt of Contreras' habeas corpus record, including Martinez's juvenile court record. *See* Trav. Had Petitioner exercised due diligence by reading Contreras' record upon receipt, he would have discovered Martinez's juvenile court record at that time.

---

[5] Respondent argues that the judgment became final on March 7, 2007, when the California Court of Appeal issued a remittitur, however, a "remittitur merely designates the judgment of the appellate tribunal which is authenticated to the court from which the appeal is taken and corresponds to the mandate used in the practice of the United States Supreme Court." *See Combs v. Haddock*, 209 Cal. App. 2d 627, 631 (1962); *see also Prasad v. Yates*, No. 2:09-cv-0980-FCD-JFM (HC), 2009 U.S. Dist. LEXIS 105546, at *3-4 (E.D. Cal. Nov. 11, 2009) (finding the remittitur date did not finalize the judgment).

Even if Petitioner had not received Martinez's juvenile court record around August 2006, Petitioner was aware that Martinez had a criminal past at trial. For example, comments were made to police investigators mentioning Martinez's possible juvenile court record (*see* Trav. at 14), and Becky Soto affirmatively answered that Martinez had been in prison before a relevance objection was sustained (*see* Lodg. 2 Vol. 5 at 160-61). Further, at trial Petitioner "tried to learn why Martinez was incarcerated, but it was never disclosed." *See* Pet. at 14. As such, Petitioner knew of Martinez's juvenile court record at the time of trial. Thus, Petitioner could have discovered the factual predicate of his *Brady* claim even sooner than August 2006, if he had exercised due diligence shortly after learning of Martinez's criminal past at trial.

The Court concludes that Petitioner, with due diligence, could have discovered the factual predicate of his claim before, or shortly after, receiving Martinez's juvenile court record around August 2006. Because the May 22, 2007 finality date is later than the August 2006 factual predicate date, the limitations period began on May 23, 2007, and expired on May 23, 2008. *See* 28 U.S.C. § 2244(d)(1); *see also Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001) (applying Fed. R. Civ. P 6(a) to statutes of limitation). The Petition was filed on May 7, 2017, 8 years, 11 months, and 14 days after the statute of limitations expired. Therefore, the Petition is untimely, unless sufficiently tolled.

### B. Tolling

#### 1. Petitioner Is Not Entitled to Statutory Tolling

Section 2244(d)(2) provides the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the one-year limitations period. 28 U.S.C. § 2244(d)(2). The "statute of limitations is not tolled from the time a final decision is issued on direct state appeal and the time the first state collateral challenge is filed because there is no case 'pending' during that interval." *See Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999); *see also Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir.

2003) ("[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed.").

As discussed previously, the statute of limitations expired on May 23, 2008, and Petitioner constructively filed his first state habeas petition on September 1, 2015. As such the limitations period expired prior to the filing of Petitioner's first state habeas petition. Because the limitations period is not tolled after state post-conviction proceedings are final and before state habeas proceedings are initiated, Petitioner is not entitled to statutory tolling under § 2244(d)(2). *Nino,* 183 F.3d at 1006. As such, the instant Petition is time-barred, unless Petitioner can establish an entitlement to equitable tolling. *See Bills v. Clark*, 628 F.3d 1092, 1097-98 (9th Cir. 2010).

### 2. Petitioner Fails to Show That Equitable Tolling Is Warranted

A petitioner is entitled to equitable tolling if he shows that (1) he has been pursuing his rights diligently and (2) some extraordinary circumstance stood in his way, preventing timely filing. *Holland v. Florida*, 560 U.S. 631, 649 (2010). Again, reasonable diligence is required. *Id.* at 653. Equitable tolling is available only when extraordinary circumstances beyond the prisoner's control make it impossible to file the petition on time, and those circumstances were the cause of the late filing. *Bills*, 628 F.3d at 1097; *see also Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999) (finding that equitable tolling is only available "[w]hen external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim"). The petitioner bears the burden of demonstrating his entitlement to equitable tolling. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

Petitioner argues that he is entitled to equitable tolling because he "has been pursuing his rights diligently since at least 2007" and he "knew nothing of Brady [or] of a prosecutor's duty to disclose exculpatory evidence until 2012." *See* Trav. at 7. Petitioner claims he was diligent in 2007 because he met a possibly exonerating witness and was working to gather the resources to interview him. *See* Pet. at 13-14. Once his family hired an attorney and investigator at the end of 2008, the witness decided he was no

longer able to help Petitioner. *Id.* At that point, the attorney said he would review the trial transcripts, but nothing came of the review. *See* Pet. At 13-14. Petitioner then "waited until late 2011 and early 2012 before [he] finally decided to study [his] case and conduct legal research." *Id.* Respondent argues Petitioner has not been diligent because there is a near ten-year delay between the receipt of Martinez's juvenile court record and the filing of the instant Petition. *See* Ans. at 17. Respondent further argues that Petitioner's lack of knowledge of *Brady* until 2012 is insufficient to show extraordinary circumstances. *See id.*

Petitioner has not established diligence during the entire time he seeks to toll. *See* Pet. at 13-14. While he alleges diligence between 2007 and 2008 and from 2011 on, Petitioner does not assert any facts to support his diligence from 2008 when the witness withdrew to late 2011 when Petitioner began his legal research. *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) ("[T]he party seeking equitable tolling must have acted with reasonable diligence throughout the period he seeks to toll."); *White v. Long*, No. CV 13-02121 SVW (AN), 2013 U.S. Dist. LEXIS 116054, at *17 (C.D. Cal., Aug. 12, 2013) (explaining that equitable tolling requires a showing of diligence during the time the party seeks to toll). As such, Petitioner has not demonstrated the requisite diligence and is not entitled to equitable tolling.

Further, Petitioner does not establish that extraordinary circumstances stood in his way of timely filing. First, Petitioner's lack of knowledge of *Brady* is not an extraordinary circumstance warranting equitable tolling. Ignorance of the law is regularly rejected as a basis for equitable tolling because it does not demonstrate extraordinary circumstances, but common circumstances many prisoners experience. *See Ford v. Pliler*, 590 F.3d 782, 789 (9th Cir. 2009) (noting that the equitable tolling "standard has never been satisfied by a petitioner's confusion or ignorance of the law alone"); *see also Waldron-Ramsey v. Pacholke,* 556 F.3d 1008, 1013 n.4 (9th Cir. 2009) ("[A] pro se petitioner's confusion or ignorance of the law is not, itself, a circumstance warranting equitable tolling."); *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006)

(holding that "a pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance"). Second, Petitioner's financial inability to immediately hire an investigator or attorney after meeting the potential witness in 2007 is not an extraordinary circumstance. *See McMillan v. Woods*, No. 2:11-CV-10390, 2011 U.S. Dist. LEXIS 150241, at *11-12 (E.D. Mich. Dec. 8, 2011) (finding no extraordinary circumstance existed where the petitioner argued he was "entitled to equitable tolling of the limitations period because he was unknowledgeable in the law and was waiting for his family and friends to raise money to hire an attorney to pursue his post-conviction remedies"). Consequently, the Court finds that Petitioner's lack of knowledge of *Brady* and his financial inability to immediately obtain resources are not extraordinary circumstances that warrant equitable tolling of the AEDPA statute of limitations.

Thus, Petitioner has not demonstrated the requisite diligence or any extraordinary circumstances that prevented him from timely filing. Therefore, he is not entitled to equitable tolling. *See Holland* 560 U.S. at 649. Accordingly, Petitioner's Petition is untimely.

## CERTIFICATE OF APPEALABILITY

The federal rules governing habeas cases brought by state prisoners require a district court that dismisses or denies a habeas petition to grant or deny a certificate of appealability in its ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254. For a certificate of appealability to issue, a petitioner must show that (1) reasonable jurists would find it debatable whether there is a valid claim of constitutional denial, *and* (2) reasonable jurists could debate whether the district court reached the proper procedural conclusion. *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). Because Petitioner has not made the showing that reasonable jurists could debate this procedural conclusion, the Court **DECLINES** to issue a certificate of appealability.

//
//
//

# CONCLUSION

Based on the foregoing and having reviewed the files herein, the Court **DISMISSES** the Petition with prejudice as untimely. Further, the Court **DECLINES** to issue a certificate of appealability. The Clerk of Court is instructed to enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

Dated: October 4, 2018

Hon. Michael M. Anello
United States District Judge